JOE GILOVICH & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7746.   Promulgated April 15, 1927.

Under the evidence, *held*, petitioner was a partnership and not an association. A mining partnership is a partnership within the meaning of the term as used in the Revenue Act of 1918.

*Eugene A. Bond, Esq.*, for the petitioner.
*A. G. Bouchard, Esq.*, for the respondent.

This is an appeal from the determination by the respondent of a deficiency of $2,727.05 in income taxes for the calendar year 1920. The Commissioner computed the tax against this petitioner as an association, denying to it the status of a partnership.

FINDINGS OF FACT.

The Ibex Mining Co. is a Colorado corporation owning certain gold and silver mining property in Lake County, Colorado, divided into blocks approximately 100 feet square on the surface and extending from one mine level to another, a depth of from 60 feet to 100 feet. The company did not operate the property on its own account, but let the same out on lease or permit to individuals and groups of individuals. The petitioner herein was one of the groups of individuals operating on the property of the mining company under a lease. Persons desiring to work on the Ibex Mine made application to the company for a lease, designating the blocks desired. If the application was approved, the company would issue to the applicant a lease in the shape of a form letter, designating the blocks and levels upon which the applicant was given permission to work, and containing at the foot thereof the names of the individuals to

whom the lease was granted and the respective interests of each individual in the lease. This lease or permit incorporated by reference a form lease containing in more detail the terms and conditions upon which the company leased the property, copies of which were posted on the shaft of the mine and filed at the office of the mining company and were, at all times, open to the inspection of lessees and applicants for leases.

The mining company, at its own expense, kept open the property and supplied the power for hoisting the ore and waste to the surface. The lessees bore all the costs and expenses of the actual mining. Under the terms of the lease all of the ore had to be sold through the mining company, which, after deducting its charges for materials supplied, as well as the royalty provided for, paid the balance of the proceeds, if any, to the lessee.

In December, 1918, petitioner made application for a lease upon certain blocks and the same was granted by the company. Thereafter, in January, 1919, petitioner made application for a lease upon additional ground, which was likewise granted by the company, and again in March, 1920, made application for a lease upon still further ground, which was also granted by the company.

At the beginning of the operations of Joe Gilovich & Co. under the first lease obtained from the mining company, petitioner consisted of two individuals, namely, Joe Gilovich and John Cortellini, each owning a one-half interest. Subsequently additional individuals were taken into the group and given interests in the lease and leases subsequently acquired. The individuals so taken in were: Jack Verdolaick, John Bogunovich, and Samuel Tomasovich. All of these individuals were practical, experienced miners familiar with the conditions of this particular mine and the most of them were related to each other by some family tie. There were no formal instruments in writing under which these individuals grouped themselves for the operation of these leases, the entire arrangement between the parties being oral. The parties merely got together and agreed upon the basis on which they would operate the lease. Originally Gilovich and Cortellini agreed to work the lease upon equal shares. When they determined to take additional parties into the enterprise they approached miners whom they had known for many years, to some of whom they were related and whom they knew to be practical, experienced miners, familiar with the Ibex mining property. No formal agreements were entered into. They simply offered orally to the respective individuals an interest in the lease and those individuals accepted orally the interest offered. There were no writings evidencing the respective interests of the parties (other than as shown on the lease received from the mining

company) or covering in any way the terms upon which the parties had agreed to operate the leases. The added individuals paid nothing for the interests acquired under the leases.

The parties agreed orally to bear the expenses and to share the profits of the enterprise in accordance with their respective interests. At the end of each month a statement of all expenses was prepared and each individual contributed his share to the total expense. When there were any profits a similar statement thereof was prepared and each individual received a share of such profits.

After Gilovich and Cortellini had taken in the additional parties named above, the respective interests of the parties constituting the petitioner herein were as follows:

| | |
|---|---|
| Joe Gilovich | Three-eighths |
| John Cortellini | Two-eighths |
| Jack Verdolaick | One-eighth |
| John Bogunovich | One-eighth |
| Samuel Tomasovich | One-eighth |

These interests remained the same through the taxable year. Some time after the taxable year Cortellini withdrew from the venture and surrendered his interest in the lease. He received nothing in payment for his interest, the only consideration being that he was thereafter relieved from his portion of the expenses of the venture. Cortellini's interest was taken over by the other parties owning the leases and later disposed of.

Petitioner had no capital and kept no regular set of books. The expenses of operation were paid monthly. Such books as were kept and the statements of expenses and profits rendered were made by Cortellini's bookkeeper. There was no organization with officers or a board of directors or trustees, nor was there a managing partner. All questions pertaining to the operation of the enterprise were determined by agreement among all of the individuals.

In the taxable year the receipts from the venture exceeded the expenses by the sum of $29,270.52. The petitioner made a partnership return showing the distribution of the net income to the individuals according to their respective interests. The individuals made individual return of their shares of the profits and paid the tax thereon.

### OPINION.

VAN FOSSAN: The question presented by this appeal is whether petitioner was, during the taxable year, an association or a partnership within the meaning of the Revenue Act of 1918. Petitioner contends that it was a partnership, while respondent has asserted a deficiency on the theory that it was an association and taxable as a corporation.

In the case of *Hecht* v. *Malley*, 265 U. S. 144, 157; 68 L. Ed. 949, 957, the word " association," as used in section 1 of the Revenue Act of 1918, is defined as follows:

The word " association " appears to be used in the Act in its ordinary meaning. It has been defined as a term " used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise."

Other definitions cited in the same opinion are:

A body of persons organized, for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation.

An organized but unchartered body analogous to but distinguished from a corporation.

Petitioner in this case did not conduct its business upon the methods and forms used by incorporated bodies. It had no capital stock or certificates of interest in its ownership; no officers, trustees or directors; it had no charter and was not created by declaration of a trust or writing of any kind. All of the members of the petitioner actively engaged in the operation of the business and each had a voice in its management. Under such facts we fail to see such similarity between the petitioner and a corporate organization as would warrant the holding that it was an association under the Supreme Court decision above quoted.

In view of our conclusion that petitioner was not an association, it follows that it was not taxable as a corporation. This determination disposes of the principal question in the case, and except for a contention of respondent that a mining partnership does not fall within the category of partnerships as used in the law, it would be perhaps unnecessary to decide whether petitioner was a general partnership engaged in mining, as it contends, or what is technically known as a mining partnership, as insisted by respondent. Chancellor Kent defined a partnership as " a contract of two or more competent persons to place their money, effects, labor and skill, or some of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." A " mining partnership " is distinguishable from the ordinary commercial or trading partnership chiefly in those characteristics that flow from the fact that in a mining partnership there is no *delectus personae*. As stated in 40 C. J. 1147:

Except as to the few peculiarities which depend upon this distinction, the law governing a mining partnership is not different from that applicable to an ordinary commercial partnership, and elements of the latter are common also to the former.

On the other hand, the same work states:

There is nothing in the nature of mining which forbids the creation of a partnership by an ordinary partnership contract which would draw to the

relation of the parties all the incidents of a trading partnership, including the *delectus personae.*

In the present case the partners were well known to each other and some of them were related by blood ties. The selection of the partners is shown to have been made by reason of the trust and confidence of each in the other. No change was made in the membership without the assent of all. Under the facts, it might well be held the petitioner was an ordinary partnership engaged in mining, rather than a " mining partnership." If the. contrary conclusion were reached, however, it would not, in our judgment, be fatal to petitioner's contention, for we can not agree with the assumption of respondent that mining partnerships are not " partnerships " under the revenue law.

The absence of the *delectus personae* or such other element as may distinguish a mining partnership from the ordinary trading partnership is not such a fundamental distinction as to require a holding that a mining partnership is not a " partnership " as that term is used in section 1 of the Revenue Act of 1918. Nor do we believe that the statement of the Supreme Court in *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110; 70 L. Ed. 67, that " the term ' partnership ' as used in these sections obviously refers only to ordinary partnerships " was intended to confine the term to such an extent as necessarily to exclude a mining partnership from its scope. To accept the opposite conclusion would lead to a situation in which an organization would be without any of the specified taxable groups. We feel that such a strained and technical construction is warranted neither by the letter nor intent of the revenue law.

We have indicated above that petitioner was not an association and thus falls outside the group taxable as corporations. It is either a partnership or merely a group of individuals engaged in a mining enterprise. In either event, the persons composing the operating entity would be taxable as individuals. Petitioner has most, if not all, of the fundamental characteristics of a partnership. No logical reason has been advanced for denying it classification as such and very persuasive reasons are presented for so doing. It is our opinion that petitioner was a partnership within the meaning of the Revenue Act of 1918, and we so hold.

*Judgment will be entered for petitioner on 15 days' notice, under Rule 50.*